UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CLAUDE HUDSON ALBERT,

        Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC,

        Defendant.

Civil Action No.: 19-074 (FLW)

**OPINION**

**WOLFSON, Chief Judge**:

Plaintiff Claude Hudson Albert ("Plaintiff") filed the instant Complaint against Specialized Loan Servicing, LLC, ("Defendant" or "SLS"), in which he asserts various state and federal causes of action in connection with an underlying state foreclosure proceeding that resulted in a final judgment issued against him. In lieu of an answer, Defendant moves for dismissal, under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff's claims are precluded by, among other things, the *Rooker-Feldman* doctrine and certain claim preclusion doctrines; as an alternative basis, Defendant moves to dismiss Plaintiff's claims on statute of limitations and failure to plead grounds. For the reasons set forth below, Defendant's Motion is **GRANTED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 22, 2009, Plaintiff and his wife, Ilona Albert, entered into a $207,000.00 Note with SunTrust Mortgage, Inc. ("SunTrust"). Certification of William P. Reiley, dated July 10, 2019, ("Reiley Cert."), ¶ 1, Ex. A.[1] On that same date, Plaintiff and Ms. Albert executed a

---

[1] Because Defendant raises a jurisdictional challenge on this Motion, the Court is "not confined to the allegations in the complaint . . . and can look beyond the pleadings to decide" whether Plaintiff's causes of action against Defendant are barred by the *Rooker-Feldman* doctrine,

1

Mortgage to Mortgage Electronic Registration Systems ("MERS"), as nominee for SunTrust, secured by the property located at 58 Shelburne Drive, Ewing, New Jersey (the "Property"). Reiley Cert., ¶ 2, Ex. B. On February 1, 2016, MERS assigned the Mortgage and Note to SLS, and the transaction was recorded approximately one week later. Reiley Cert, ¶ 2, Ex. B. The Mortgage entered default on August 1, 2014, and, on May 2, 2016, SLS filed a foreclosure complaint (the "Foreclosure Action") against Plaintiff in the Superior Court of New Jersey (the "State Court"), to repossess and sell the Property to recover the remaining balance on the Mortgage. Reiley Cert., ¶ 3, Ex. C.

On June 6, 2016, Plaintiff removed the Foreclosure Action to this Court, and the matter was assigned to the Honorable Michael A. Shipp, U.S.D.J. *See Specialized Loan Servicing, LLC v. Albert*, No. 16-3233, 2017 U.S. Dist. LEXIS 12551 (D.N.J. Jan. 30, 2017); Reiley Cert., ¶ 4, Ex. D. Plaintiff then filed an answer which included the following ten counterclaims against SLS: (1) lack of standing to foreclose; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress; (5) quiet title; (6) slander of title; (7) declaratory relief; (8) violations of the Truth in Lending Act; (9) violations of the Real Estate Settlement Procedures Act; and (10) rescission. Reiley Cert., ¶ 5, Ex. E. However, because Judge Shipp determined that the parties' dispute did not involve a federal question, the case was remanded to the Superior Court of New Jersey. *Specialized Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 12551, at *5-6; Reiley Cert., ¶ 6, Ex. F. The Foreclosure Action proceeded in the State Court, during which Plaintiff

---

as Defendant has so argued here. *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 Fed. Appx. 285, 288 (3d Cir. 2008); *see, e.g.*, *Reed v. New Jersey Div. of Youth & Family Servs.*, 09-3765, 2012 U.S. Dist. LEXIS 50969, at *5-6 (D.N.J. Apr. 10, 2012) (treating *Rooker-Feldman* challenge as factual attack on court's jurisdiction); *Hua v. Lehman XS Trust Mortg. Pass-Through Certificates*, No. 17-1457, 2017 U.S. Dist. LEXIS 193785, at *5-6 (E.D. Pa Nov. 14, 2017) (same).

appeared *pro se*. Reiley Cert., ¶ 7, Ex. G. Ultimately, on July 2, 2018, the State Court granted SLS's application for final judgment and issued a writ of execution (the "Foreclosure Judgment"). Reiley Cert., ¶ 8, Ex. H.

On August 8, 2018, Plaintiff filed a lawsuit against SLS, which was again assigned to Judge Shipp. Reiley Cert., ¶ 9, Ex. I. In the complaint, Plaintiff claimed that Defendant committed "unconscionable fraud" in connection with the underlying state court foreclosure proceedings, and he requested "immediate injunctive relief." Reiley Cert., ¶ 9, Ex. I. More specifically, Plaintiff sought to "[i]nstantly dismiss or estop the State court's emergency war powers action [the Foreclosure Action] with prejudice before any further damage occurs[,]" and also require Defendant to account for and return "all property seized . . . by means of calculated deceit[.]" Reiley Cert., ¶ 9, Ex. I (alteration added). Defendant then filed a motion to dismiss the complaint, but, on December 4, 2018, before the motion was adjudicated, Plaintiff voluntarily dismissed his claims. Reiley Cert., ¶ 9, Ex. K.

On January 3, 2019, Plaintiff filed the instant Complaint, seeking a temporary restraining order "to prevent the foreclosure sale of his home." Plaintiff's Ex-Parte TRO Application, 1. In addition, the Complaint alleged four claims against Defendant, including: (1) fraud; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"); (3) unjust enrichment; and (4) declaratory relief. On January 9, 2019, this Court denied Plaintiff's application for emergent injunctive relief, finding that his request to enjoin the foreclosure sale of his property was prohibited by *Rooker-Feldman*. Following the denial of Plaintiff's request for emergent injunctive relief, on July 10, 2019, Defendant moved to dismiss his additional state and federal causes of action.

In moving for dismissal, Defendant argues that Plaintiff's claims for non-injunctive relief are barred by *Rooker-Feldman*, principles of *res judicata*, and the New Jersey entire controversy

3

doctrine. In the alternative, Defendant maintains that Plaintiff's causes of action are time-barred and fail as a matter of law. Plaintiff opposes the Motion.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotation marks omitted). Pursuant to this standard of review, the factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quotation marks and citation omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in

detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (quotation marks and citation omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation marks and brackets omitted).

### B. Analysis

#### i. Rooker-Feldman

First, Defendant contends that the *Rooker-Feldman* doctrine divests the Court of subject matter jurisdiction over Plaintiff's claims, because he wrongfully "seek[s] federal district court review of [an] adverse state court foreclosure judgment[.]" Defendant's Motion to Dismiss, at 9. Under the *Rooker-Feldman* doctrine, federal courts are prohibited from hearing "controversies that are essentially appeals from state-court judgments." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (quotation marks and citation omitted). Stated another way, "*Rooker-Feldman* . . . is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quotation marks and

citation omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In order for the *Rooker-Feldman* doctrine to deprive a federal court of subject matter jurisdiction, the Third Circuit has held that four requirements must be satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (citing *Exxon Mobil Corp.*, 544 U.S. at 284). The Third Circuit has explained that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim, or whether the newly raised claims are so inextricably intertwined that a favorable decision in federal court would require negating or reversing the state-court decision." *Great W. Mining & Mineral Co.*, 615 F.3d at 165, 170 n.4; *see In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009).

More specifically, a federal claim is "inextricably intertwined" with an adjudicated issue in state court when either of the following two conditions are satisfied: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment . . . ." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). Moreover, in determining whether a claim is "inextricably intertwined" with a state court judgment, the Third Circuit has explained that "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those

proceedings." *Great W. Mining & Mineral Co.*, 615 F.3d at 167 (citations omitted); *see Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006).

At the outset, I note that Plaintiff does not dispute the dismissal of his FDCPA and unjust enrichment claims in his opposition brief. Thus, because Plaintiff has abandoned those claims, I will only consider whether his remaining cause of action for fraud and his request for declaratory relief are subject to the *Rooker-Feldman* doctrine. *See, Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."); *Powell v. Verizon*, No. 19-8418, 2019 U.S. Dist. LEXIS 161552, at *22 (D.N.J. Sept. 20, 2019) ("A plaintiff concedes a claim when she fails to oppose arguments in support of a motion to dismiss . . . ."); *Person v. Teamsters Local Union 863*, No. 12-2293, 2013 U.S. Dist. LEXIS 149252, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). I first turn to Plaintiff's request for declaratory relief.

To begin, the Court finds that the requirements of the *Rooker-Feldman* doctrine are easily satisfied as to Plaintiff's request for declaratory relief. First, Plaintiff's interest in the Property was extinguished on July 2, 2018, when the State Court rendered the Foreclosure Judgment in Defendant's favor. Second, instead of challenging that ruling in the Appellate Division, Plaintiff initiated multiple lawsuits in federal court, including one which he voluntarily dismissed, and the current action, which he filed on January 3, 2019, about six months after the State Court's Foreclosure Judgment. Thus, the state court judgment was clearly issued before Plaintiff filed this suit. Third, in his request for declaratory relief, Plaintiff complains of a state court judgment, as he alleges that the "Court should give no credence whatsoever to the proposed judgment against Plaintiff's property[,]" and that, instead, the "Assignment of Mortgage . . . should be Cancelled

7

and Expunged from Plaintiff's Land Record/Real Property Title." Compl., ¶¶ 56, 61. Fourth, because Plaintiff seeks to "cancel," or, in essence, rescind the assignment of the Note and Mortgage, which was deemed valid in the foreclosure proceeding, the Court cannot grant Plaintiff's request without rejecting the State Court's decision. Therefore, for these reasons, the *Rooker-Feldman* doctrine divests this Court of jurisdiction to hear Plaintiff's request for declaratory relief.[2]

Indeed, federal courts, including the Third Circuit, have applied the *Rooker-Feldman* doctrine when a mortgagor seeks to rescind the assignment of a note and mortgage which a state court has deemed valid in a subsequent federal action. *See In re Madera*, 586 F.3d at 232 (holding that the claim for rescission of the mortgage was barred by *Rooker-Feldman*, since "a favorable decision for the [plaintiff] in the federal courts would prevent the [state court] from enforcing its order to foreclose the mortgage."); *Ayres-Fountain v. E. Sav. Bank,* 153 Fed. Appx. 91, 92 (3d Cir. 2005) (finding that the *Rooker-Feldman* doctrine applied where the plaintiff "sought recission of the mortgage and damages," because "the relief she seeks would invalidate the [state court's foreclosure] judgment against her."); *see also Gage v. Wells Fargo Bank, N.A.*, No. 11-862, 2011 U.S. Dist. LEXIS 102758, at *14 (D.N.J. Sept. 9, 2011) (explaining that "when a defendant in a state foreclosure action files a subsequent civil suit, courts have held that any claim that seeks to rescind the mortgage transaction is barred because it would be inextricably intertwined with the foreclosure judgment.") (quotation marks and citation omitted); *Patetta v. Wells Fargo Bank, NA*, No. 09-2848, 2010 U.S. Dist. LEXIS 47233, at *29 (D.N.J. May 13, 2010) (ruling that "[t]o the

---

[2] The foreclosure sale of Plaintiff's Property was scheduled on January 9, 2019, and has thus presumably occurred. Therefore, it appears that the Court would be unable to grant Plaintiff's request for declaratory relief, even if *Rooker-Feldman* did not preclude him from asserting this claim.

8

extent that plaintiffs' claims seek rescission of the mortgage, they are barred by *Rooker-Feldman*.").

However, I find that Plaintiff has asserted a non-barred claim for fraud in Count I of his Complaint. Relevant here, the Sixth and Ninth Circuit Courts of Appeals have recognized a "fraud exception" to *Rooker-Feldman*'s jurisdictional bar, which applies when a litigant alleges that a "state court judgment[] [was] procured by . . . [the d]efendants through fraud, misrepresentation, or other improper means." *McCormick v. Braverman*, 451 F.3d 382, 392-93 (6th Cir. 2006); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004). The Sixth and Ninth Circuits have reasoned that, under such circumstances, a plaintiff asserts a claim that is independent of the claims brought in a state court foreclosure proceeding. *Id*. On the other hand, the Second, Fifth, Seventh, Eight, Tenth, and Eleventh Circuits have rejected a "fraud exception" to the *Rooker-Feldman* doctrine.[3]

Although the Third Circuit has not had the occasion to weigh in on this issue, in multiple nonprecedential, albeit persuasive, opinions, the Third Circuit has permitted a plaintiff to pursue a claim for damages that arises from a defendant's alleged fraudulent conduct or deceptive practices occurring prior to a state court judgment of foreclosure. *See Easley v. New Century Mortg. Corp.*, 394 Fed. Appx. 946, 948 (3d Cir. 2010) (finding that, because the plaintiff's "allegations of fraud and other pre-foreclosure wrongs were not presented to the state court (which granted default judgment)," the "state court's judgment would not be implicated by a finding that [the defendant] was liable under the [applicable consumer fraud statute] for fraud and/or other pre-foreclosure

---

[3] *See Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002); *Williams v. Liberty Mut. Ins. Co.*, No. 04-30768, 2005 U.S. App. LEXIS 5660, at *4 (5th Cir. 2005); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035-36 (8th Cir. 1999); *Myers v. Wells Fargo Bank, N.A.*, 685 Fed. App'x. 679, 681 (10th Cir. 2017); *Scott v. Frankel*, 606 F. App'x 529, 532 n.4 (11th Cir. 2015).

wrongs."); *Gray v. Martinez*, 465 Fed. Appx. 86, 89 (3d Cir. 2012) (holding that the plaintiff "appears to allege that the financial defendants committed fraud by their actions in commencing and executing the foreclosure action . . . . All told, while the question is close, we cannot conclude that [the plaintiff's] claims against the financial defendants would require us to directly review the state-court decision."); *Conklin v. Anthou*, 495 Fed. Appx. 257, 262 (3d Cir. 2012) (explaining that a plaintiff is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy . . . .").

For example, in a recent decision, the Third Circuit found that the *Rooker-Feldman* doctrine did not preclude a plaintiff from alleging a common law fraud claim against a bank which obtained a foreclosure judgment against her in a prior state court proceeding. *See Shibles v. Bank of Am., N.A.*, 730 Fed. Appx. 103, 104 (3d Cir. 2018). In so holding, the Third Circuit reasoned that the plaintiff's claims were based on the bank's alleged deceptive conduct, such that "the source of the injury [was] the defendant's actions," as opposed to the state court foreclosure judgment. *Id*. at 105-06. Therefore, according to the Third Circuit, the plaintiff asserted a non-barred, independent fraud claim, even if its adjudication would "necessarily entail reviewing the state foreclosure judgment . . . ." *Id*. at 106; *see Conklin*, 495 Fed. Appx. at 262 (holding that a plaintiff can allege a fraud claim, "regardless of whether his success on those claims might call the veracity of the state-court judgments into question.").

Here, in support of his fraud claim, "Plaintiff alleges that the Note and Mortgage, supplied and used by SLS to support the claim of the right to foreclose under the Mortgage, were not signed by Plaintiff and contain signatures of Plaintiff that were forged." Compl., ¶ 18. That is, according to Plaintiff, "SLS committed fraud [through] the use of forged documents transmitted to Plaintiff to prove their authority over the Note and Mortgage in order to commence a foreclosure action

10

against Plaintiff." Compl., ¶ 19. Plaintiff also submits a "Handwriting Expert Report," dated November 17, 2018, which was prepared by Mr. Baggett, who concludes:

> Based on a significant number of differences of identifiable handwriting characteristics among the questioned and known signatures, it is my professional expert opinion that a different person wrote the name of Claude H. Albert on the questioned documents [*i.e.*, the Note and Mortgage]. Someone did indeed forge the signatures of Claude H. Albert on the 'Q1' and 'Q2' documents.

Compl., ¶, 23; Exhibit 1. Plaintiff alleges that these findings prove that his signature was forged, and that SLS obtained the Foreclosure Judgment through fraudulent practices. Compl., ¶ 21. Moreover, unlike his request for declaratory relief, as a result of these alleged fraudulent actions, Plaintiff seeks an award of "damages" in an unspecified amount which exceeds $75,000. Compl., ¶ 36.

Because the Court has already determined that the first and third requirements of *Rooker-Feldman* are satisfied here (Plaintiff lost in state court and the disputed judgment was rendered prior to the initiation of this action), the doctrine's jurisdictional bar is applicable to Plaintiff's fraud claim if it is "inextricably intertwined" with the Foreclosure Judgment. To reiterate, this standard will be satisfied when the adjudication of a litigant's claim in federal court will result in either of the following conditions: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment . . . ." *In re Knapper*, 407 F.3d at 580 (citation omitted); *see Lampe v. Lampe*, 665 F.3d 506, 518 n.4 (3d Cir. 2011). Pursuant to this standard, I find that Plaintiff has asserted an independent, non-barred cause of action for fraud against SLS.

First, in contrast to SLS's contentions, the adjudication of Plaintiff's fraud cause of action will not disturb the Foreclosure Judgment, notwithstanding the counterclaims of fraud in the

11

inducement and fraud in the concealment which Plaintiff asserted against SLS in the prior foreclosure proceedings. Indeed, although the State Court entered an adverse judgment against Plaintiff, the factual allegations in support of his fraud claim, in this case, were not raised during the prior foreclosure proceedings. Therefore, because the alleged conduct which forms the basis of Plaintiff's fraud claim was not presented during the foreclosure action, the Court can grant his request for damages, if appropriate, without having to determine if the State Court erred in deciding this issue.

Indeed, the Third Circuit has held that a plaintiff asserts a non-barred fraud claim when it arises from a defendant's alleged use of deceit to secure a writ of execution in a state court foreclosure action, if the complained-of conduct was not at issue during the course of those proceedings. *See Shibles*, 730 Fed. Appx. at 106 (finding that the *Rooker-Feldman* doctrine did not preclude the plaintiff's cause of action for fraud, because the state court foreclosure judgment "acquiesced in, or left unpunished," the deceptive conduct which was alleged in the pleadings); *Easley*, 394 Fed. Appx. at 948 (holding that the *Rooker-Feldman* doctrine was inapplicable to the case, because, among other things, the plaintiff's fraud claim arose from "conduct which was not at issue before the state court . . . ."); *see also DaCosta v. Wilmington Trust, N.A.,* No. 19-913, 2019 U.S. Dist. LEXIS 147229, at *14 (N.D.N.Y. Aug. 29, 2019) (Report & Recommendation), adopted at, 2019 U.S. Dist. LEXIS 147229 (N.D.N.Y. Nov. 12, 2019) (ruling that the plaintiff's fraud claim for damages, arising from the defendants alleged use of "a forged mortgage, note, and loan modification agreement" in the state court foreclosure proceedings, was "not barred by the *Rooker-Feldman* doctrine.").

Second, the adjudication of Plaintiff's fraud cause of action will not negate the Foreclosure Judgment. In that connection, the Third Circuit has held that, within the context of foreclosure

12

actions, "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Great W. Mining & Mineral Co.*, 615 F.3d at 167; *see also Shibles*, 730 Fed. Appx. at 105-06. Indeed, a litigant is not prevented from "otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question." *Conklin*, 495 Fed. Appx. at 262.

Here, SLS contends that the fraud claim "regarding forgery on the loan documents should be precluded by the *Rooker-Feldman* doctrine," because its adjudication "would undermine the state court's determination regarding the validity of the note and mortgage." Defendant's Reply Brief, at 3. However, because Plaintiff's fraud claim arises from SLS's alleged fraudulent conduct prior to the Foreclosure Action, he has asserted an independent cause of action which he is entitled to pursue, even if its resolution negates a legal conclusion that the state court reached in the previous foreclosure proceedings. Thus, I find that *Rooker-Feldman's* jurisdictional bar does not preclude Plaintiff's fraud claim. *See Shibles*, 730 Fed. Appx. at 106 ("Although we agree with the District Court that finding in favor of [the plaintiff] here would necessarily entail reviewing the state foreclosure judgment and acknowledging what might have been a meritorious defense, that is not determinative.").

### ii. Res Judicata and the Entire Controversy Doctrine

Although an application of the *Rooker-Feldman* doctrine is not appropriate in this action, as SLS argues, the principles of *res judicata* and the New Jersey entire controversy doctrine, nonetheless, serve to preclude Plaintiff's fraud claim. Indeed, the Third Circuit has explained that these expansive claim preclusion devices can prohibit a litigant from asserting a cause of action

13

that would otherwise survive the *Rooker-Feldman* doctrine's jurisdictional bar. *See Ayres-Fountain*, 153 F. App'x at 93 ("[E]ven if review of the complaint were not barred by *Rooker-Feldman*, we agree with the District Court that [the plaintiff's] claims were barred by *res judicata*.").

Whether *res judicata* applies, namely whether a state court judgment should have a preclusive effect in a subsequent federal action, depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). "Both New Jersey and federal law apply *res judicata* or claim preclusion when three circumstances are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted). Moreover, the doctrine "bars not only claims that were brought in a previous action, but also claims that could have been brought." *Id.* (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)).

New Jersey, however, imposes its own stricter claim preclusion device, separate and apart from, but closely related to, the principles of *res judicata*. In fact, the Third Circuit has described the entire controversy doctrine as "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 229 n.130 (3d Cir. 2016) (quotations and citation omitted); *see also Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). More specifically, the

14

doctrine "requires a party to bring in one action all affirmative claims that [it] might have against another party, including counterclaims and cross-claims, and to join in that action all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quotations and citation omitted) (alteration in original); *see* N.J. Ct. R. 4:30A ("Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . .").

Specifically, with respect to foreclosure actions, the New Jersey entire controversy doctrine does not bar a subsequent claim unless it is germane. *See* N.J. Ct. R. 4:64-5. A claim is "considered to be germane to a foreclosure action if [it] arise[s] out of the mortgage that is the basis of the foreclosure action." *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 Fed. Appx. 469, 472 (3d Cir. 2011); *Leisure Tech.-Ne., Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 458 (App. Div. 1975) ("The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action."); *In re Mullarkey*, 536 F.3d at 229-30 ("Germane claims are those arising out of the mortgage transaction which is the subject matter of the foreclosure action . . . ."). Moreover, courts in this district have explained that "any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." *Zebrowski v. Wells Fargo Bank, N.A.*, No. 07-5236, 2010 U.S. Dist. LEXIS 61196, at *6 (D.N.J. Jun. 21, 2010) (quotation marks and citation omitted).

In the instant action, the New Jersey entire controversy doctrine precludes Plaintiff's fraud claim. As an initial matter, I note that the foreclosure proceedings in state court constitute "a previous state-court action involving the same transaction," *i.e.*, the assignment of the mortgage, the default, and the foreclosure itself. *Bennun v. Rutgers State University*, 941 F.2d 154, 163 (3d Cir. 1991). Moreover, and of significant importance here, Plaintiff's fraud claim arises from the mortgage transaction which was the basis of the prior foreclosure proceedings. As stated above, in support of his fraud claim, Plaintiff alleges that the "Note and Mortgage, supplied and used by SLS to support the claim of the right to foreclosure under the Mortgage, were not signed by Plaintiff and contain signatures of Plaintiff that were forged." Compl., ¶ 18. According to Plaintiff, SLS "misrepresented" that those documents "were copies" of the original Note and Mortgage which he signed, when, in fact, SLS fraudulently created them to support their right to foreclose. Compl., ¶ 25. As such, Plaintiff raises a challenge to the alleged deceptive conduct that SLS engaged in to secure the Foreclosure Judgment—a position that constitutes a "germane" defense which should have been raised during the course of the prior foreclosure proceedings in state court.[4]

Indeed, various courts within this district have so ruled. *See Davis v. Kahn*, No. 18-8560, 2019 U.S. Dist. LEXIS 69408, at *17 (D.N.J. Apr. 24, 2019) (finding that, because the plaintiff's "allegations of fraud in connection with the First and Second Assignments arise out of the

---

[4] Although the state foreclosure judgment was obtained through default, that circumstance does not preclude an application of the entire controversy doctrine to this case, particularly since Plaintiff was representing himself during certain parts of the proceedings and, indeed, asserted counterclaims against SLS. *See Mason v. US Bank, NA,* No. 16-1366, 2016 U.S. Dist. LEXIS 171255, at *11-12 (D.N.J. Dec. 12, 2016); *Dennis v. Mers/Merscorp Mortg. Elec. Registration Sys., Inc.*, No. 11-4821, 2011 U.S. Dist. LEXIS 118616, at *1-2 (D.N.J. Oct. 13, 2011); *Fraize v. Ginnie Mae*, No. 14-7152, 2016 U.S. Dist. LEXIS 32489, at *9 (D.N.J. Mar. 14, 2016).

underlying mortgage transaction," those "claims are germane and would also be barred by the New Jersey entire controversy doctrine . . . ."); *Pitts v. Bayview Loan Servicing, LLC,* No. 18-633, 2018 U.S. Dist. LEXIS 202218, at *13 (D.N.J. Nov. 29, 2018) (holding that the plaintiffs' "claims sounding in fraud . . . are barred by the New Jersey entire controversy doctrine because they could have been raised in the state-court foreclosure action."); *Mason*, 2016 U.S. Dist. LEXIS 171255, at *11-12 (ruling that the plaintiffs' "claims regarding the fraudulent and invalid assignments of the Mortgage were germane to the state court foreclosure action," and therefore, are barred from being asserted in a subsequent action in federal court); *Patetta*, 2010 U.S. Dist. LEXIS 47233, at *37 (explaining that the plaintiffs' "claims for fraud . . . are each the sort of claims that have been deemed germane by courts . . . .").

Nonetheless, in an attempt to circumvent an application of the entire controversy doctrine, Plaintiff contends that he could not have asserted his fraud claims in a prior action, because "he had no knowledge of those claims and the fact that they were actionable until he received the report of Mr. Curt Baggett,"[5] dated November 17, 2018. Plaintiff's Opposition, at 8. However, Plaintiff's argument is without merit. Under the New Jersey entire controversy doctrine, a litigant is deemed to have knowledge of a cause of action where "she knows, or should have known, of facts which

---

[5] Without reaching the issue, I note that numerous federal courts throughout the country have found that Mr. Baggett is not qualified to provide testimony as a handwriting expert, or have excluded his testimony as unreliable on the basis of, among other things, "series concerns" with respect to his credentials. *See Balimunkwe v. Bank of Am.*, No. 14-327, 2015 U.S. Dist. LEXIS 117980, at *26-50 (S.D. Ohio Sept. 3, 2015); *Routh v. Bank of Am., N.A.*, No. 12-244, 2013 U.S. Dist. LEXIS 110818, at *18 (W.D. Tex. Aug. 7, 2013); *United States v. Revels*, No. 10-110-1, 2012 U.S. Dist. LEXIS 65069, *16-26 (E.D. Tenn. May 9, 2012); *Dracz v. Am. Gen. Life Ins. Co.*, 426 F. Supp. 2d 1373 (M.D. Ga. 2006), *aff'd*, 201 Fed. Appx. 681 (11th Cir. 2006); *Wheeler v. Olympia Sports Center, Inc.*, No. 3-265, 2004 U.S. Dist. LEXIS 20462, at *7-12 (D. Me. Oct. 12, 2004).

establish that an injury has occurred and that fault for that injury can be attributed to another." *Maertin v. Armstrong World Indus.*, 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (quoting *Riemer v. St. Clare's Riverside Med. Ctr.*, 300 N.J. Super. 101, 109 (App. Div. 1997)); *see also Napoli v. HSBC Mortg. Servs.*, No. 12-222, 2012 U.S. Dist. LEXIS 121204, at *9 (D.N.J. Aug. 9, 2010); *Mawhinney v. Bennett*, No. 8-3317, 2010 U.S. Dist. LEXIS 1715, at *29 (D.N.J. Jan. 11, 2010). Indeed, an individual who claims his signature is forged does not need an expert to inform him of that fact.

      Here, Plaintiff should have raised his fraud claim in the foreclosure action in state court. As stated, during the course of those proceedings, Plaintiff challenged SLS's alleged lack of standing to foreclose, and asserted counterclaims of fraud in the concealment and fraud in the inducement. In fact, in the prior removal action, to which SLS was a litigant, Plaintiff claimed that the defendants "do not have the right to foreclose on the Property because said Defendants," among other things, "falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice." Reiley Cert., ¶ 5, Ex. E, ¶ 58. Then, Plaintiff filed a subsequent action in federal court, in which he alleged that SLS obtained the Foreclosure Judgment through "unconscionable fraud" and "means of calculated deceit." Reiley Cert., ¶ 9, Ex. I, ¶ 27. Thus, prior to the initiation of this suit, Plaintiff was clearly aware of SLS's alleged deceptive activities, as he had raised various fraud-based claims, and challenged its right to foreclose, albeit on different, yet closely related, grounds. In that regard, Plaintiff should have been aware of a mortgage document which he did not purportedly sign, as he participated in the foreclosure action and was, in fact, presented with that document during the course of its proceedings. Indeed, instead of waiting until he received an adverse judgment in a state action which proceeded for more than two years, Plaintiff was required to raise such a challenge at that

18

time. Having failed to do so, Plaintiff cannot, now, advance additional theories of fraud in connection with the state foreclosure proceedings.[6] *See Shibles, N.A.*, 730 Fed. Appx. at 106-107 (3d Cir. 2018) ("[A] defendant in a foreclosure case may not fail to diligently pursue a germane defense and then pursue a civil case against the lender alleging fraud by foreclosure.") (quoting *Adelman v. BSI Fin. Servs., Inc.*, 179 A.3d 431 (App. Div. 2018)). Therefore, I find that Plaintiff's cause of action for fraud is barred under the New Jersey entire controversy doctrine.[7]

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to dismiss is **GRANTED**.

DATED: February 14, 2020

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

---

[6] Although Plaintiff has abandoned his FDCPA and unjust enrichment claims, I, nonetheless, find that the New Jersey entire controversy doctrine precludes Plaintiff from pursuing them in the instant action. Indeed, based on the allegations contained in the Complaint, those claims arise from SLS's alleged "fraudulent use of forged and void documents[,]" compl., ¶¶ 37-53, and are, therefore, germane to the state court foreclosure proceedings. *See Patetta*, 2010 U.S. Dist. LEXIS 47233, at *37 (precluding unjust enrichment claim under the entire controversy doctrine as germane to a prior foreclosure action); *Hua v. PHH Mortg.*, No. 14-7821, 2015 U.S. Dist. LEXIS 130992, at *15 (D.N.J. Sept. 29, 2015) (same); *see also Monclova v. Goldberg & Wolf, LLC*, No. 17-1481, 2017 U.S. Dist. LEXIS 175548, at *11 (D.N.J. Oct. 23, 2017) (barring FDCPA claim under the entire controversy doctrine as germane to a prior foreclosure action); *Mannarino v. Deutsche Bank Nat'l Trust Co.*, No. 14-7771, 2015 U.S. Dist. LEXIS 121903, at *7 (D.N.J. Sept. 14, 2015) (same).

[7] Because the entire controversy doctrine bars Plaintiff's claims, I need not reach the additional arguments raised in SLS's Motion.